## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2015, 8:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Mark Small
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of B.M., <br><br> T.B., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | February 13, 2015 <br><br> Court of Appeals Cause No. 49A04-1407-JT-328 <br><br> Appeal from the Marion Superior Court, The Honorable Marilyn A. Moores, Judge, The Honorable Larry E. Bradley, Magistrate Cause No. 49D09-1401-JT-19 |

**Najam, Judge.**

## Statement of the Case

T.B. ("Mother") appeals the termination of her parental rights over her minor child, B.M. ("Child").[1]  Mother presents one issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the termination of her parental rights.

We affirm.

## Facts and Procedural History

On May 11, 2012, DCS filed a petition alleging Child was a child in need of services ("CHINS").  The petition was based on a report from K.O.,[2] Child's paternal aunt, that Mother had abandoned Child, that Mother's whereabouts were unknown, and that Mother could not provide for Child's basic needs.  At the initial hearing, held that same day and at which Mother did not appear, the trial court ordered that Child be placed outside of Mother's home.  Child was placed into relative care with K.O.

On July 2, the trial court adjudicated Child a CHINS after Mother, pursuant to an Admission and Agreement on Services ("the Admission"), agreed that Child was a CHINS and agreed to participate in services offered by DCS.

---

[1] Father does not participate in this appeal.

[2] K.O. is also referred to as K.S. in the record.

Among other things, the Admission provided:

> 2. [Mother] admits the following:
>
>> [Child] . . . is a [CHINS] because [Mother] currently lacks a stable home for herself and her child.
>
> * * *
>
> 4. . . . [A]ll the parties understand and agree that [Mother's] obligations and services, which are listed herein, are those believed by the parties, at this time, to be in the child's best interest. These obligations and/or services may be amended by the Court . . . .
>
> * * *
>
> b. . . . [Mother] will participate in all of the services indicated within this document in order to demonstrate the ability to meet the medical, physical, emotional, mental[,] and/or educational needs of the child.
>
> c. . . . [Mother] further understands and agrees that "successful completion" of the services includes [Mother] following all recommendations made by the counselors, therapists[,] or other service provider[s].
>
> (A) . . . [Mother] shall participate in, and successfully complete home based casework and therapy, as arranged by the [Family Case Manager ("FCM")], and follow all recommendations.
>
> (B) . . . [Mother] shall complete a parenting assessment, as arranged by the FCM, and follow all recommendations.

DCS Exh. 13. Initially, Mother's treatment plan included the completion of a parenting assessment, home-based services, and following recommendations. Recommendations included completion of a parenting class and supervised visitations.

[6] At some point, DCS became concerned that Mother was abusing marijuana[3] and struggling with depression.[4] As a result, DCS recommended that Mother submit to drug screens, and, after she failed a number of them, DCS referred Mother to intensive outpatient substance abuse treatment ("IOP"). DCS also recommended that Mother complete a psychological evaluation and continue to submit to drug screens. And, later, Mother was referred to complete a substance-abuse assessment. The combination of her depression and substance abuse resulted in a DCS referral for Mother to complete dual diagnosis IOP, which would help with both her depression and her substance abuse.

[7] Mother completed parenting classes and submitted to a psychological evaluation. Otherwise, however, Mother failed to complete the services offered by DCS. From July 2012, when the trial court adjudicated Child a CHINS, to April 2014, when DCS stopped Mother's services for the final time, Mother was referred and re-referred to all services, including to a number of different providers. All service providers discharged Mother as unsuccessful.

[8] Mother's providers all cited her failure to attend services as the reason for discharge. Indeed, although Mother last tested positive for marijuana in

---

[3] The record does not disclose what gave rise to the concerns regarding Mother's substance abuse, but Mother testified that she first used marijuana at age 16, and she began using marijuana consistently, three to four times a week, approximately six months after Child's birth.

[4] DCS became concerned that Mother struggled with depression because she discussed suffering from depression, and she had "explosive" episodes during team meetings. Tr. at 96. The psychological examination resulted in a depression diagnosis.

September 2013, she missed a number of drug screenings. In 2014, for example, Mother attended only two of ten scheduled drug screenings. She was unsuccessfully discharged for the last time in April 2014.

[9] Mother also failed to complete her dual diagnosis IOP. After she missed three scheduled appointments, Mother's service provider unsuccessfully discharged her in April 2014 and refused to treat her again for six months. At the termination hearing, Mother testified that she no longer used marijuana and, therefore, did not believe it important for her to complete IOP services.

[10] Finally, although DCS conducted home-based services, including supervised visitations, at Mother's home for a time, she was nevertheless unsuccessfully discharged for failure to attend. On a number of occasions, when DCS arrived to conduct services, Mother was not home and could not be reached. Mother last visited Child through DCS in February 2014, and DCS closed the referral.

[11] Mother blamed her absences on a lack of transportation and on conflicts with her work schedule. DCS, however, provided Mother with bus passes, and several providers testified that they worked with Mother to schedule appointments around her work schedule. DCS also changed Mother's IOP provider, in part, because Mother expressed that it would be easier for her to attend services with the new provider.

[12] After several review hearings, in January 2014, the court changed Child's permanency plan from reunification to adoption by K.O., who had cared for

Child since his CHINS adjudication for all but three months.[5] DCS, however, continued services for Mother until April, when her current providers discharged her for failure to complete services.

On June 10 and 11, the trial court held the termination hearing, at which the Child's guardian ad litem recommended adoption, and, on June 23, the court entered an order terminating Mother's parental rights over Child. In so doing, the trial court noted that Mother "had over two years to successfully complete services," but she had failed to do so. Appellant's App. at 12. Further, the court found that "[Child] has been observed as stable and bonded in his placement," which provided him with permanency. Thus, the court concluded:

> 24. There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by his mother. [Mother] . . . has had over two years to successfully complete services in the current ChINS. [Mother] has not made the effort needed to come close to safely reunify with her son and does not believe she needs to address substance abuse and mental health issues. [Mother] believes that visitation is important but still failed to consistently visit to the point visits were closed.
>
> * * *
>
> 33. Continuation of the parent-child relationship poses a threat to [Child's] well-being. [Child] is in need of permanency and has been out of the home for two years. [Mother] cannot provide a

---

[5] In October 2013, allegations arose that K.O. had used marijuana, and K.O. refused to submit to a drug screening. Thus, DCS removed Child from K.O.'s care and placed him with Mother's adoptive mother ("Grandmother"). Grandmother, however, did not wish to adopt or keep Child long term, and, in January 2014, K.O. agreed to submit to drug screenings. K.O. submitted to three screenings, which did not indicate the presence of marijuana, and DCS returned Child to K.O.'s care.

stable environment and wholly meet his needs.  Substance abuse and untreated mental health issues would impact safety and parenting. . . .

* * *

37.  Termination of the parent-child relationship is in the best interests of [Child].  Termination would allow for him to be adopted into a stable and permanent home where his needs will be safely met.

38.  There exists a satisfactory plan for the future care and treatment of [Child,] that being adoption.

*Id.* at 12-13.  This appeal ensued.

## Discussion and Decision

Mother contends that the evidence was insufficient to terminate her parental rights over Child.  We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.*  Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[15] Before an involuntary termination of parental rights can occur in Indiana, in relevant part, DCS is required to allege and prove:

> (A) that one (1) of the following is true:
>
> > (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > * * *
>
> (B) that one (1) of the following is true:
>
> > (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;[6]
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).  That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may

---

[6] Here, Child has been adjudicated a CHINS on two separate occasions, but DCS did not allege this provision in the CHINS petition.  Thus, it is not at issue in this appeal.  *See* Ind. Code § 31-35-2-4(b).

terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[16] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[17] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[18] Mother concedes that Child had been removed from her care for a period of at least six months, and she does not specifically address any of the trial court's finding or conclusions. Indeed, Mother does not address all of the provisions of Indiana Code Section 31-35-2-4(b)(2) on which the trial court relied to terminate her parental rights. Mother argues only that the reasons for removal and for continued placement outside the home have been remedied, but she does not address the trial court's finding that "the continuation of the parent-child relationship" between Child and Mother "poses a threat to the well-being of the child. I.C. § 31-35-2-4(b)(2)(B)(ii); *see* Appellant's App. at 13.

[19] Because Mother does not address the trial court's conclusion that "[c]ontinuation of the parent-child relationship poses a threat to [Child's] well-being," Appellant's App. at 13, she has effectively waived appeal of her subsection (b)(2)(B) claims. Again, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. *In re L.S.*, 717 N.E.2d at 209. DCS needed to establish only one of the requirements of subsection (b)(2)(B) before the trial court could have terminated parental rights. The trial court here found that DCS established the requirement of subsection (b)(2)(B)(ii), and Mother does not appeal that finding. Because "Mother does not specifically challenge the trial court's findings or conclusions[, t]o the extent that Mother argues that the trial court's findings or conclusions are clearly erroneous, Mother has waived this issue by failing to make a cogent argument." *Runkel v. Miami Co. Dep't of Child Servs. (In re B.R.)*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied*.

[20]   Waiver notwithstanding, the trial court's findings are not clearly erroneous. Mother contends that the evidence was insufficient to support the termination of her parental rights over Child because "[she] performed some of the services [offered by DCS], the reasons for the child's removal varied from the services offered to [her], and [her] work schedule prevented her attendance from some of the services." Appellant's Br. at 8. These arguments amount to a request for us to reweigh the evidence, which we will not do. The evidence most favorable to the judgment demonstrates that Mother suffered from depression and substance abuse. Despite this, she failed to successfully complete drug screenings, substance abuse treatment, and mental health treatment. Moreover, she failed to visit with Child consistently. We hold that the trial court's judgment in this respect is supported by the evidence.

[21]   Section 31-35-2-4(b)(2) also requires that termination of the parent-child relationship be in the best interests of the child, and Mother contends the evidence does not support that determination. Here, "the trial court [was] required to look beyond the factors identified by DCS and consider the totality of the evidence. In so doing, the trial court must [have] subordinated the interests of the parent to those of the child." *In re C.A.*, 15 N.E.3d 85, 94 (Ind. Ct. App. 2014). A trial court should consider the recommendations of the case manager and court-appointed advocate when it determines whether termination is in a child's best interest. *See S.C. v. Ind. Dep't of Child Servs. (In re J.C.)*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). "A parent's historical inability to provide a suitable environment, along with the parent's current inability to do

the same, supports finding termination of parental rights is in the best interests of the children." *Id.*

[22] Based on Mother's substance abuse, depression, and failure to complete services over a two-year period, Mother's case manager and Child's guardian ad litem recommended adoption as in Child's best interests. The trial court found that adoption would give Child stability and permanency in a bonded environment and that adoption, therefore, was in Child's best interests. For all of the reasons discussed above, its holding is supported by the evidence.

[23] Affirmed.

[24] Mathias, J., and Bradford, J., concur.