In the Matter of The INVOLUNTARY TERMINATION OF the PARENT–CHILD RELATIONSHIP OF B.R., Minor Child and Her Mother, Monica Runkel,

Monica Runkel, Appellant–Respondent,

v.

Miami County Department of Child Services, Appellee–Petitioner.

No. 52A05–0703–JV–154.

Court of Appeals of Indiana.

Oct. 23, 2007.

Transfer Denied Dec. 20, 2007.

Katherine A. Cornelius, Indianapolis, IN, Attorney for Appellant.

Peter Diedrichs, Peru, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Monica Renee Runkel ("Mother") appeals the trial court's termination of her parental rights to B.R. Mother raises one issue, which we revise and restate as whether Ind.Code § 31–34–1–16, which limits the ability to terminate parental rights to a child voluntarily placed out of the home for special treatment, requires reversal of the trial court's order terminating Mother's parental rights. We affirm.

The relevant facts follow. Mother is the adoptive mother of B.R., born on October 2, 1992. As B.R. grew older, she exhibited behavioral problems such as hurting herself, assaulting other children, setting fires, and killing small animals. Diagnosed with Reactive Attachment Disorder, ADHD, and Conduct Disorder, she was admitted to LaRue D. Carter Memorial Hospital sometime in 2001. Her behavior worsened, and, on April 24, 2002, the Miami County Department of Child Service ("MCDCS") placed B.R. in Methodist Hospital, and then, the following month, at the Youth Opportunity Center.

On April 26, 2002, the MCDCS filed a petition alleging that B.R. was a child in need of services ("CHINS"). The petition alleged in part that:

\* \* \* \* \*

According to [Mother], [B.R.'s] behaviors, which include destruction of property (her own clothing and toys along with other people's belongings in the household) setting fires, self-injurious behaviors, and lying has intensified within the past few weeks. Most recently [B.R.] set a fire by [Mother's] bed while the family was sleeping. [B.R.] later put the fire out and went to bed without saying anything to anyone. The next day [B.R.] admitted to setting the fire....

During the intake at Methodist Hospital, [Mother], the intake therapist, and the OFC worker discussed the possibility for services following discharge.

[Mother] admitted to the OFC worker that she was experiencing difficulty in maintaining [B.R.] in the home while safeguarding her other children.

With the information provided and interviews with the therapist, [Mother], and [B.R.], it is the opinion of the OFC worker that if [B.R.] is to receive intensive counseling and supervision 24 hours a day, she would best be served in a residential type setting. With [B.R.] placed out of the home family is assured a respite from [B.R.] and the chance to reside without fear.

Exhibit 3.

Mother admitted the allegations of the CHINS petition. After a dispositional hearing, the court found that reunification was not yet possible because of continuing friction between B.R. and Mother and ordered Mother to participate in visitations with B.R. and in any counseling sessions identified by her therapist. After several months at the Youth Opportunity Center, B.R. continued to display violent outbursts. Nevertheless, she had demonstrated enough progress to be reunified with Mother, who was ordered to participate in the Wraparound Program to ease the transition.

On November 27, 2002, B.R. was reunified with Mother. Soon, however, B.R. began destroying property, fighting with other children, and threatening to set fires again. She was unable to remain in school. Four and a half months after the reunification, B.R. was placed at the St. Vincent Stress Center and, later, at LaRue D. Carter Memorial Hospital. Mother stated that she could not care for B.R. and feared for the safety of her other children. The discharge plan at LaRue Carter was for B.R. to be placed in a foster home, because reunification was no longer the goal of the CHINS proceedings. The court ordered Mother to attend team meetings.

During the following year, Mother only visited B.R. twice. Mother brought all of B.R.'s belongings to LaRue Carter and informed her that she would never return to Mother's home. Mother also wrote letters to B.R., which the staff at LaRue Carter had to monitor because B.R. would bang her head, pull out her hair, and become "uncontrollable" after reading them. Transcript at 62. They requested that Mother's letters be less informative about circumstances at home and more inquisitive about B.R.'s treatment. When Mother failed to comply with this request, the staff asked her to stop sending letters. The staff also asked Mother to stop calling. Although LaRue Carter offered several counseling services, including "family sessions," Mother never made an appointment. *Id.* at 75.

In 2004, B.R. was moved to the Anderson Center to prepare her to live with Sheila Hall, the mother of Mother's ex-boyfriend. B.R. continued to exhibit symptoms of Reactive Attachment Disorder, including "fits of rage requiring physical intervention." *Id.* at 101. The Anderson Center provided family therapy sessions, which Mother attended only "three to five times." *Id.* at 109. She did not participate in any other services provided by the Anderson Center, including family programming and family support group sessions. Because of "long gaps" in between family therapy sessions, "it was difficult ... to work on therapy issues," and B.R. would become "very ... emotionally unsettled" after visits with Mother. *Id.* at 106, 113.

On May 4, 2005, the court prohibited further contact between Mother and B.R. because of the negative effects on B.R.'s behavior. On June 1, 2005, B.R. was placed in a therapeutic foster home with

foster parents Randall and Micki Turner. Hall subsequently withdrew from her plan to adopt B.R.

B.R. showed much improvement while living at the Turners' home. At a hearing in January of 2006, Mother testified that B.R. "needs more care than [Mother and her family] can give" and that "it wasn't safe for [B.R.] to be in [Mother's] home." *Id.* at 218–219. The Turners sought to adopt B.R., and, on January 17, 2006, the MCDCS filed a petition to terminate Mother's parental rights. After a hearing, the trial court granted the petition to terminate Mother's parental rights to B.R., entering findings of fact and conclusions thereon as follows:

\* \* \* \* \*

5. The minor child [B.R.] has been removed from her parent [Mother] for more than six (6) months under a dispositional decree.

6. The minor child [B.R.] has been removed from her parent [Mother] and placed under the supervision of the [MCDCS] for at least fifteen (15) of the last twenty-two (22) months.

7. There is a reasonable probability that the conditions that resulted in the removal of [B.R.] from the care of [Mother] will not be remedied.

8. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of [B.R.].

9. Termination of the parent-child relationship is in the best interests of the minor child [B.R.].

10. The [MCDCS] plan for adoption of the minor child [B.R.] following termination of the parent-child relationship is reasonable and satisfactory.

11. Clear and convincing evidence has been presented to this Court during the contested Fact–Finding Hearings conducted on October 11, 2006, and December 13, 2006, for this Court to conclude that the parental rights of [Mother] with her daughter [B.R.] should be, and hereby are ORDERED to be terminated forthwith involuntarily.

\* \* \* \* \*

Appellant's Appendix at 18–19.

The sole issue is whether Ind. Code § 31-34-1-16, which limits the ability to terminate parental rights to a child voluntarily placed out of the home for special treatment, requires reversal of the trial court's order terminating Mother's parental rights. The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. *Bester v. Lake County Office of Family and Children*, 839 N.E.2d 143, 147 (Ind.2005). However, these parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *Id.* Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.* The purpose of terminating parental rights is not to punish parents, but to protect children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind.Ct. App.1999), *reh'g denied, trans. denied.*

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Bester*, 839 N.E.2d at 147. We will consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. *Id.* Here, the trial court made findings in granting the termination of Mother's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-

tiered standard of review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* The trial court's judgment will be set aside only if they are clearly erroneous. *Id.* "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *Id.* (citation and internal quotations omitted).

■ Ind.Code § 31–35–2–8(a) (2004) provides that "if the court finds that the allegations in a petition described in [Ind. Code § 31–35–2–4] are true, the court shall terminate the parent-child relationship." Ind.Code § 31–35–2–4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege that:

(A) one (1) of the following exists:
  (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
  (ii) a court has entered a finding under Ind.Code § 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
  (iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
  (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

  (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't. of Pub. Welfare,* 592 N.E.2d 1232, 1234 (Ind.1992); *Doe v. Daviess County Div. of Children & Family Services,* 669 N.E.2d 192, 194 (Ind.Ct. App.1996), *trans. denied.*

■ Mother does not specifically challenge the trial court's findings or conclusions. To the extent that Mother argues that the trial court's findings or conclusions are clearly erroneous, Mother has waived this issue by failing to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a). Rather, Mother argues that B.R. "was removed because of [Mother's] financial limitations" and that, under Ind. Code § 31–34–1–16, "[m]oving to termination is completely inappropriate under those circumstances." Appellant's Brief at 8.

■ We note at the outset that Mother did not raise this issue before the trial court. Issues not raised at the trial court are waived on appeal. *Cavens v. Zaberdac,* 849 N.E.2d 526, 533 (Ind.2006). "In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.'" *Id.* (quoting *Endres v. Indiana State Police,* 809 N.E.2d 320, 322 (Ind. 2004)). We find this issue to have been waived on appeal. *See, e.g., id.*

■ Waiver notwithstanding, we will address Mother's arguments. Ind.Code § 31–34–1–16(a) provides that:

The [Department of Child Services] may not:

  (1) initiate a court proceeding to:

    (A) terminate the parental rights concerning; or

    (B) transfer legal custody of; or

  (2) require a parent, guardian, or custodian to consent to:

    (A) the termination of parental rights; or

    (B) transfer of legal custody of;

a child with an emotional, a behavioral, or a mental disorder or a developmental or physical disability who is voluntarily placed out of the home for the purpose of obtaining special treatment or care, *solely* because the parent, guardian, or custodian is unable to provide the treatment or care. Relinquishment of custody of a child described in this subsection may not be made a condition for receipt of services or care delivered or funded by the department or the county office of family and children.

(Emphasis added). We agree with Mother that the statute "[c]learly ... is a limitation on the State's power to request the termination of the parent child relationship."[1] Appellant's Brief at 10. Mother appears to argue that she voluntarily placed B.R. out of the home solely because she was unable to provide treatment for her and, thus, that Ind.Code § 31–34–16–1 prevents the State from terminating her parental rights. Thus, Mother interprets the statute to mean that the MCDCS cannot file a petition for termination if B.R. was removed solely because Mother was unable to provide necessary treatment.[2]

However, even under Mother's interpretation of the statute, the record reveals that Mother was motivated to place B.R. out of the house in part because of her inability to control B.R. and her fear that B.R. might harm her other children. According to the original CHINS petition, Mother admitted "that she was experiencing difficulty in maintaining [B.R.] in the home while safeguarding her other children." Exhibit 3. One of the stated goals of the petition was that Mother and her family have "the chance to reside without

---

1. We note that Ind.Code § 31–34–1–16 was cited in *Collins v. Hamilton,* 231 F.Supp.2d 840 (S.D.Ind.2002), *aff'd,* 349 F.3d 371 (7th Cir.2003). There, parents filed a class action complaint alleging in part that the State, by requiring their children to be made wards of the State to obtain payment for necessary residential placement for mentally ill children, had violated their Fourteenth Amendment right to family association. *Collins,* 231 F.Supp.2d at 849. The court addressed the statute as follows:

> Prior to a recent change in the law, the only way the parent of a child in need of residential psychiatric treatment could obtain the funds necessary to cover the costs of room and board was to have a local office of family and children file a CHINS action and have the child declared a CHINS. However, effective July 1, 2001, Indiana law was changed to provide an alternative method for obtaining needed services for children. Under this new law, parents who are unable to provide for treatment outside the home for a mentally ill child no longer need to have their child declared a CHINS in order to receive public funds. Ind.Code § 31–34–1–16(a).

*Id.* The court held that "Indiana CHINS law is consistent with a parents' [sic] right to rear his or her child." *Id.* at 851. The issue of whether the State's actions had violated Ind. Code § 31–34–1–16(a) was not before the court.

2. The State argues that the word "solely" applies to the State's termination of parental rights, i.e., that the State may not terminate parental rights solely because of the parent's inability to provide the child with treatment. Even under the State's argument, the evidence demonstrates that the trial court did not terminate Mother's parental rights solely because she was unable to provide treatment. Thus, because neither interpretation would affect the result in this case, we need not decide between them at this time.

fear." *Id.* After the attempt at reunification failed in 2003, Mother again stated that she could not care for B.R. and feared for the safety of her other children. At a hearing in January of 2006, Mother testified that B.R. "needs more care than [Mother and her family] can give" and that "it wasn't safe for [B.R.] to be in [Mother's] home." Transcript at 218–219. Taken together, these admissions show that Mother did not voluntarily place B.R. out of the house solely because she could not provide B.R.'s treatment. Thus, we hold that Ind.Code § 31–34–1–16 does not apply to the present case, and the trial court's termination of Mother's parental rights is not clearly erroneous. *See, e.g., Castro v. State Office of Family and Children,* 842 N.E.2d 367, 375 (Ind.Ct.App. 2006) (holding that the trial court's conclusion that termination of Father's parental rights was in the child's best interests was supported by clear and convincing evidence and therefore was not clearly erroneous), *trans. denied.*

▮▮▮▮ Mother also argues that the trial court's failure to dismiss the termination proceedings under Ind.Code § 31–34–1–16 constitutes fundamental error. The fundamental error doctrine applies to egregious trial errors. *In re E.E.,* 853 N.E.2d 1037, 1043 (Ind.Ct.App.2006) (citing *S.M. v. Elkhart County Office of Family & Children,* 706 N.E.2d 596, 600 (Ind. Ct.App.1999)), *trans. denied.* In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively. *Id.* Because we hold that Ind.Code § 31–34–1–16

does not apply to this case, the trial court's failure to raise the statute neither constitutes a clearly blatant violation of basic and elementary principles nor presents harm or the potential for harm. Thus, there was no fundamental error.[3]

For the foregoing reasons, we affirm the trial court's termination of Mother's parental rights to B.R.

Affirmed.

RILEY, J. and FRIEDLANDER, J. concur.

---

**3.** Mother also argues that her counsel's failure to raise Ind.Code § 31–34–1–16 at the trial court level constitutes ineffective assistance of counsel. Because we hold that Ind. Code § 31–34–1–16 does not apply to the present case, failure to raise the statute in arguments before the trial court cannot constitute ineffective assistance of counsel.