## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 23 2015, 6:23 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of:<br><br>B.H. (Minor Child),<br><br>and<br><br>E.C. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | March 23, 2015<br><br>Court of Appeals Case No. 02A03-1408-JT-275<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Charles F. Pratt, Judge<br><br>The Honorable Lori K. Morgan, Magistrate<br><br>Case No. 02D08-1309-JT-114 |

**Crone, Judge.**

## Case Summary

[1] E.C. ("Mother") appeals the trial court's judgment terminating her parental rights to B.H. ("Child").[1] She argues that the trial court clearly erred in determining that the Indiana Department of Child Services ("DCS") presented clear and convincing evidence that there is a reasonable probability that the conditions that resulted in Child's removal or placement outside Mother's home will not be remedied and that termination of Mother's parental rights is in Child's best interests. Concluding that the trial court did not clearly err, we affirm.

## Facts and Procedural History

[2] The facts most favorable to the trial court's judgment follow.[2] On August 28, 2011, Mother gave birth to Child. Mother took methadone while she was pregnant, and Child was born with methadone in her system. Five days were required to wean Child off methadone.

[3] On May 17, 2012, in case number 02D05-1205-FB-87 ("Criminal Case"), Mother was arrested for dealing in a controlled substance. On May 31, 2012, DCS filed its verified petition alleging that Child was a child in need of services ("CHINS") after learning that Mother tried to sell illegal drugs in Child's

---

[1] B.H.'s father consented to her adoption. Appellant's App. at 18.

[2] Mother did not present the facts in accordance with our standard of review as required by Indiana Appellate Rule 46(A)(6)(b).

presence. Mother's Criminal Case and the CHINS case then moved along in tandem. On June 6, 2012, DCS removed Child, then ten months old, from Mother's care on an emergency basis and placed Child with her paternal great aunt and uncle. On June 18, 2012, in the Criminal Case, Mother pled guilty to two counts of class C felony dealing in a controlled substance. On June 26, 2012, the Criminal Case court took her guilty plea under advisement and assigned Mother to Drug Court. Drug Court placed Mother at Hope House in Fort Wayne, a residential facility providing programs for women with chemical dependency.

[4] On July 3, 2012, the trial court held a hearing on the CHINS petition. Mother admitted to the following allegations in the petition: she used illegal drugs; she once used illegal drugs in Child's presence; she previously had drug paraphernalia in her home; in October 2011, DCS substantiated an allegation that she neglected Child by permitting his exposure to illegal drugs; she pled guilty to two counts of class C felony dealing in a controlled substance in the Criminal Case; and she was unable to provide independent care, housing, and financial support for Child. The trial court adjudicated Child a CHINS. In its dispositional order and parental participation plan, the trial court ordered Mother to obtain employment, earn a GED, participate in Narcotics Anonymous ("NA") and/or Alcoholics Anonymous ("AA"), obtain a drug/alcohol assessment and follow all recommendations, obtain a parenting assessment and follow all recommendations, submit to random drug screens, attend visits with Child, and refrain from all criminal activity. Mother's Drug

Court program contained many of these same requirements, including substance abuse treatment and participation in NA or AA.

[5] In July and September 2013, DCS gave Mother two referrals for a drug/alcohol assessment, but she did not follow through.[3] DCS decided not to make any additional referrals for such an assessment after it realized that Mother was receiving treatment for substance abuse through Drug Court and DCS did not want to duplicate services.[4]

[6] In September 2013, Mother completed a parenting assessment, which recommended that she participate in a parenting program, individual counseling, a substance abuse program, and comply with Drug Court rules and the rules of her current home. Mother did complete a parenting program. Tr. at 121. On September 4, 2012, Mother violated Drug Court rules when she tested positive for unprescribed morphine and codeine. She was sentenced to two weeks in jail. She then returned to live at Hope House. However, on October 11, 2012, Mother again violated Drug Court rules by using heroin, opiates, and fentanyl and was sentenced to three weeks in jail.

---

[3] DCS and the trial court both cite Mother's failure to complete the first two referrals for drug/alcohol assessment without proper acknowledgement that Mother was also participating in Drug Court.

[4] This case highlights the need for coordination among the various entities that were assigned by the trial court and the Drug Court and referred by DCS to assist Mother. One wonders at the logistical challenges, such as transportation and time management, facing a person who must comply with all the overlapping requirements.

[7]     On October 31, 2012, Drug Court referred Mother to Tara Treatment Center in Franklin where she completed a thirty-day inpatient treatment program. After that, Mother moved to the Rose Home in Fort Wayne, a residential facility with treatment for women with drug addiction. Tara recommended that Mother continue treatment at the Bowen Center. Mother completed a drug/alcohol assessment at Bowen. Bowen recommended that Mother undertake a six-month intensive outpatient program ("IOP"), which included three components: moral recognition therapy ("MRT"), relapse prevention, and advanced relapse prevention. The first six weeks consisted of three meetings a week, which thereafter dropped to two meetings a week for five weeks and one meeting a week for twelve weeks. Mother attended group therapy regularly through March 2013 (about five months), but she attended only two MRT sessions. Therefore, she did not complete the IOP.

[8]     In January 2013, DCS provided Mother with a referral for individual counseling as recommended by the parenting assessment. *Id*. at 122. Mother was supposed to meet weekly with a counselor. Between January 2013 and August 7, 2013, Mother attended fourteen counseling sessions, cancelled sixteen sessions, and had three no-shows. In August 2013, as discussed below, Mother's participation in Drug Court was revoked. After Mother's participation in the Drug Court was revoked, she did not attend individual counseling sessions until March 10, 2014, the last counseling session she attended. Mother's counselor believed that Mother had not achieved her goals and needed more counseling.

[9] On April 10, 2013, DCS filed a permanency report with the trial court recommending that Child be reunited with Mother. On April 22, 2013, the trial court issued a permanency plan order, finding that it was in Child's best interests to be reunified with Mother and ordering that the permanency plan be accomplished within twelve months. The trial court also ordered that Child's placement with her paternal great aunt and uncle be continued.

[10] Both the CHINS dispositional order and Drug Court required Mother to attend NA or AA meetings. Mother attended weekly NA meetings while she was in Drug Court. Although Mother did not provide physical verification to DCS that she was attending weekly NA meetings, her DCS case manager was in constant contact with Mother's Drug Court case manager and "didn't require it really because I knew she was going." *Id*. at 113.[5]

[11] On August 12, 2013, Mother violated Drug Court rules for the third time by using opiates and falsifying her drug screens. The Criminal Case court revoked Mother's placement in Drug Court. On September 17, 2013, the Criminal Case court entered judgment of conviction for two counts of class C felony dealing in a controlled substance pursuant to her original plea agreement and sentenced her to four years with three and a half years suspended, and two years of

---

[5] DCS claims that Mother never provided proof of attendance at AA/NA meetings to DCS, implying that Mother did not attend such meetings. Appellee's Br. at 6. We are disappointed that DCS omits salient information as to why Mother did not supply that proof.

supervised probation. Mother also pled guilty to misdemeanor false informing and was sentenced to ten days in jail.

[12] On September 3, 2013, DCS filed a permanency report recommending termination of Mother's parental rights. On October 2, 2013, DCS filed a petition for involuntary termination of Mother's parental rights.

[13] On October 7, 2013, Mother was admitted to Tara for a second time, apparently as part of her probation. She completed a twenty-nine-day inpatient treatment program on November 5, 2013. Mother then moved in with Child's maternal grandmother. Tara recommended that Mother follow up with treatment through Bowen. Again, Bowen recommended that Mother complete an IOP. From November 2013 through April 2014, Mother attended only five therapy sessions. Mother never completed the IOP. If she returned to Bowen for treatment, she would likely be required to start the IOP over again.

[14] From September 24, 2013, through February 25, 2014, all Mother's drug screens were negative. However, after January 2014, Mother missed five drug screens. On March 14, 2014, Mother tested positive for unprescribed Cyboxin,[6] and the Criminal Case court placed her on home detention. Mother will remain on home detention until September 1, 2015. In early April 2014, just before the termination hearing, Mother tested positive for methadone. Mother

___

[6] Although the transcript refers to "Cyboxin," the drug was likely Suboxone, a prescription medication used to treat opiate dependency.

told her DCS case manager that she had a prescription for it, but she did not provide proof of a prescription.

[15] Mother's visits with Child were supervised and scheduled twice a week for about four hours per visit. Mother was frequently late to visitation. In August 2013, DCS considered in-home visitation, but then Mother was arrested and incarcerated for her Drug Court violations. From February 22, 2014, through April 10, 2014, Mother did not visit with Child.

[16] On April 10 and 11, 2014, the trial court held a hearing on DCS's petition to terminate Mother's parental rights. On July 9, 2014, the trial court issued an order terminating the parent-child relationship between Mother and Child. Mother appeals.

## Discussion and Decision

## Standard of Review

[17] This is an appeal of a termination of parental rights.

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize, however, that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. We consider only the evidence and reasonable inferences that are most favorable to the judgment. …. When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. We will set aside the [trial] court's judgment only if it is clearly erroneous. A judgment is clearly erroneous if the findings do not support the [trial] court's conclusions or the conclusions do not support the judgment.

*In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009) (citations, quotation marks, and brackets omitted).

[18] A petition to terminate a parent-child relationship involving a CHINS must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[19] The State must prove by "clear and convincing evidence" each and every element set forth in Section 31-35-2-4(b)(2). *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. "'Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival.'" *Id*. (quoting *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005)). "'Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody.'" *Id*. (quoting *Bester*, 839 N.E.2d at 148).

# Section 1 – There is a reasonable probability that the conditions that resulted in Child's removal will not be remedied.

[20]  Mother challenges the trial court's determination that DCS presented clear and convincing evidence that there is a reasonable probability that the conditions resulting in Child's removal would not be remedied. When determining whether a reasonable probability exists that the conditions justifying a child's removal or placement outside the home will not be remedied, the trial court must assess a parent's fitness at the time of the termination hearing, taking into consideration evidence of changed conditions. *A.J. v. Marion Cnty. Office of Family & Children*, 881 N.E.2d 706, 714 (Ind. Ct. App. 2008), *trans. denied*. "The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children." *Id*. "A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Also, the trial court may consider the services offered to the parent and the parent's response to those services. *Id*.

[21]  We note that Mother does not challenge the trial court's findings of fact. Because Mother does not challenge the trial court's findings, we accept them as true. *See In re Involuntary Termination of Parent-Child Relationship of B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (concluding that parent's failure to

specifically challenge the trial court's findings resulted in waiver of her argument that findings were clearly erroneous), *trans. denied*; *see also Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) ("Father does not challenge these findings and we accept them as true.").

[22] The trial court found, in relevant part, the following: Mother did not complete the IOP recommended from the alcohol/drug assessment she received at Bowen; her assignment to Drug Court was revoked after she broke the rules three times by using illegal drugs; she tested positive for methadone on April 4, 2014, but did not produce a valid prescription; she has been unable to maintain sobriety; she missed visitation with Child when she was incarcerated or when receiving inpatient treatment and was often late to her visitations with Child; she failed to visit with Child from February 22, 2014, to April 10, 2014; due to the lapses in visitation there is some question as to how well bonded Child is with Mother; Mother has not had stable housing and has lived in approximately eight different locations–including three stays in jail–since the initiation of the CHINS case; she has not maintained stable employment; and she acknowledged at the termination hearing that she was unable to provide for Child. Appellant's App. at 22-24. As discussed above, we accept these findings as true. We conclude that these findings support the trial court's conclusion that DCS presented clear and convincing evidence that there is a reasonable probability that the conditions resulting in Child's removal will not be

remedied. Mother's argument that other evidence shows that there is a reasonable probability that the conditions resulting in Child's removal will be remedied is merely an invitation to reweigh the evidence, which we must decline.[7]

## Section 2 – Termination of Mother's parental rights is in Child's best interests.

[23] Mother also contends that the trial court clearly erred in determining that DCS presented clear and convincing evidence that termination of her parental rights is in Child's best interests.

> [I]n determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the Department of Child Services and to consider the totality of the evidence. In so doing, the trial court must subordinate the interests of the parent to those of the child. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Moreover, we have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009) (citations omitted); *see also* *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999) ("[C]hildren should not be

---

[7] Given our resolution of this issue, we need not address Mother's argument that DCS failed to prove that the continuation of the parent-child relationship poses a threat to Child's well-being.

compelled to suffer emotional injury, psychological adjustments, and instability to preserve parental rights."), *trans. denied* (2000), *cert. denied* (2002).

[24] Here, Mother's DCS case manager and Child's guardian ad litem testified that it is in Child's best interests to terminate Mother's parental rights. Child has been in the care of her paternal great uncle and aunt since June 2012. They are willing and able to adopt Child. And, as we have already concluded, there is a reasonable probability that the conditions resulting in Child's removal will not be remedied. This is sufficient to establish that termination of parental rights is in Child's best interests.

[25] Nevertheless, Mother argues that her case is akin to *In re G.Y.*, 904 N.E.2d 1257, in which our supreme court concluded that clear and convincing evidence did not support the trial court's determination that termination of mother's parental rights was in the child's best interests. *G.Y.* is clearly distinguishable. There, a year *before* mother gave birth, she delivered cocaine to a police informant. Thirty-two months later, when G.Y. was twenty months old, mother was arrested and incarcerated for this offense. However, during G.Y.'s first twenty months, there were no allegations that mother engaged in any criminal behavior or was an unfit parent. Because mother was unable to place G.Y. with relatives or friends when she was arrested, DCS filed a petition alleging that G.Y. was a CHINS. Mother pled guilty to dealing in cocaine and was sentenced to twelve years, with four years suspended to probation. G.Y. was adjudicated a CHINS, and subsequently mother's parental rights were terminated. Our supreme court reversed the trial court's termination of

mother's parental rights, concluding that neither the likelihood that she would reoffend nor the amount of time it would take her to comply with the participation order constituted a sufficiently strong reason to warrant termination of her parental rights. *Id.* at 1263-64.

[26] The facts of this case are in stark contrast to *G.Y.* Mother engaged in criminal behavior, was unable to comply with Drug Court rules, and has been unable to remain sober since Child's birth. We conclude that the trial court did not clearly err in determining that DCS presented clear and convincing evidence that termination of Mother's parental rights was in Child's best interests. Therefore, we affirm the judgment terminating her parental rights.

[27] Affirmed.

Friedlander, J., and Kirsch, J., concur.