## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of N.B. (Minor Child), and

A.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

December 29, 2016

Court of Appeals Case No. 49A02-1605-JT-1105

Appeal from the Marion Superior Court

The Honorable Larry E. Bradley, Magistrate

The Honorable Marilyn A. Moores, Judge

Trial Court Cause No. 49D09-1507-JT-492

**Mathias, Judge.**

A.H. ("Mother") appeals the termination of her parental rights to N.B. ("Child"), challenging the sufficiency of the evidence supporting termination. We affirm.

## Facts and Procedural Posture

Child was born to Mother, then eighteen years old, in Marion County on January 9, 2014.[1] Child was found to have been born with marijuana, benzodiazepines, and opiates in her body, and Mother tested positive for marijuana and benzodiazepines at the time of delivery. At the same time, Mother lacked stable housing and income and was being prosecuted in an ongoing criminal matter.

For these reasons, the Marion County office of the Indiana Department of Child Services ("DCS") petitioned to have Child declared a child in need of services ("CHINS") on January 17, 2014. Child had already been removed from Mother's care and was then in the hospital. The same day, the Marion Superior Court held a detention hearing and ordered Child to be placed in the care of relatives or a foster family on Child's release from the hospital. The court further authorized Mother to have supervised parenting time with Child.

The court declared Child a CHINS on January 31, 2014, based on Mother's admission that she abused drugs, needed drug abuse treatment, and lacked

---

[1] The parental rights in Child of R.B., Child's alleged father, have also been terminated, but he does not participate in this appeal.

stable housing. After a dispositional hearing on February 28, 2014, the court ordered Mother to complete a drug abuse assessment and treatment program, submit to random drug screens, and participate in home-based case management. Mother was warned at that time that failure to participate in this plan could lead to termination of her parental rights. At that time, Child was in the care of a relative, and that placement was continued. The long-term ("permanency") plan for Child and Mother remained reunification.

About a year and a half later, after a hearing on July 17, 2015, the court changed Child's permanency plan from reunification to adoption. Child had already been placed in foster care. Mother did not appear at the hearing and her whereabouts were unknown. Mother had not been in contact with her family case manager from DCS, had so far failed to participate in the services required by the court's earlier dispositional order, and had not visited Child. For these reasons, the court concluded that adoption was now in Child's best interests. DCS petitioned to terminate Mother's parental rights on July 31, 2015.

A few months after the termination petition was filed, in November 2015, the family's DCS case manager found Mother in state prison. Mother requested and was appointed counsel from the Marion County public defender in January 2016. From January 2016 to March 2016, however, the public defender was unable to speak with Mother in prison. Mother refused to accept his calls, did not return them, and did not respond to his letters. Proceedings on the termination petition were repeatedly continued for Mother's failure to appear. On March 16, 2016, the public defender gave Mother notice by letter that he

intended to withdraw from her case, that she would then be unrepresented, and that she could be subject to default judgment if she continued to fail to appear. Appellant's App. p. 58.

[7] On April 20, 2016, the court proceeded to trial on the petition. Mother again failed to appear, and her public defender was permitted to withdraw. The family's DCS case manager and Child's guardian ad litem ("GAL") both thought that termination of Mother's rights and Child's adoption by a relative, Child's relative caregiver at the time, would be in Child's best interests. The case manager testified that, since Child was first removed from Mother's case, Mother had not participated in court-ordered services, visited Child, nor taken steps to remedy her drug abuse. Child's current relative caregiver, by contrast, was able to "provide [a] safe[,] stable home" for Child with "running water" and "stable employment." Tr. p. 9. Child's GAL submitted an affidavit agreeing with the case manager's recommendations because Mother "is unable to provide permanency for [Child]." Ex. Vol., GAL Ex. I. The court ordered Mother's parental rights in Child terminated on April 21, 2016.

[8] This appeal followed. Mother asserts that DCS failed to prove by clear and convincing evidence that conditions leading to Child's removal from Mother's care were unlikely to be remedied, that continuing the parent-child relationship was a threat to Child, that termination of that relationship was in Child's best interests, and that adoption was a satisfactory plan for Child.

# Standard of Review

[9]    DCS bore the burden below to prove its allegations by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745 (1982); Ind. Code § 31-37-14-2 (2016). On appellate review of an order terminating a parent's rights to her child, we do not reweigh the evidence or determine the credibility of witnesses. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016). We consider only the evidence that supports the judgment and the reasonable inferences to be drawn from it. *Id.* We proceed in two steps, first asking whether the evidence clearly and convincingly supports the findings made below, and second, whether the findings clearly and convincingly support the judgment. *Id.* We will set aside neither unless clearly erroneous. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). It is "not enough that the evidence might support some other conclusion[; rather,] it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 504 (Ind. 2011) (internal quotation and citation omitted).

[10]    Requiring proof by clear and convincing evidence does not give this court any broader license to reweigh the evidence than we would have if proof were by a simple preponderance. *In re E.M.*, 4 N.E.3d at 642. The question is not whether we find the evidence to be clear and convincing, *In re B.H.*, 770 N.E.2d 283, 288 (Ind. 2002) (internal citation and quotation omitted), but whether there is probative evidence from which a reasonable fact-finder could have found proof by clear and convincing evidence. *In re N.G.*, 51 N.E.3d at 1170.

# Discussion and Decision

The right of a parent to establish a home and raise her child is protected by the due process clause of the Fourteenth Amendment to the federal constitution. *In re B.R.*, 875 N.E.2d 369, 372 (Ind. Ct. App. 2007), *trans. denied*. Like all rights, this right is not absolute. *Id.* A parent's rights to her child may be terminated when the parent is unable or unwilling to meet her parental responsibilities. *Id.* Here, the parent's interests must be subordinated to those of her child. *Id.* The purpose of termination is not punishment of the parent but protection of the child. *Id.*

By statute, as relevant here, a court "shall terminate" a parent-child relationship, I.C. § 31-35-2-8(a), if it finds the following conditions satisfied as alleged in a termination petition:

> (B) that one . . . of the following is true:
>
>   (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
>   (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child . . . ;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

*Id.* at § 4(b)(2)(B) through (D). We note that DCS was required to show the truth of only one allegation under subsection (B), i.e., that there was a reasonable probability *either* that the adverse conditions would not be remedied *or* that continuation of the relationship posed a threat to Child's well-being. *See In re K.E.*, 39 N.E.3d 641, 646 (Ind. 2015).

[13] As required by statute, I.C. § 31-35-2-8(c), the court below entered findings and conclusions in support of its termination order. Specifically, as relevant here, the court found that

> 9. [Mother] failed to engage in services or visit [Child] and on July 17, 2015, the plan for permanency was changed from reunification to adoption.
>
> 10. There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by her mother[,] who has demonstrated by her almost total lack of effort that she is unable or unwilling to parent.
>
> 11. Continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would pose as a barrier to obtaining permanency for her through an adoption. . . .
>
> 13. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow her to be adopted into a stable and permanent home where her needs will be safely met.

14.    There exists a satisfactory plan for the future care and treatment of [Child],[2] that being adoption.

Appellant's App. p. 16.

[14] Mother argues that these findings are unsupported by sufficient evidence, that they are therefore clearly erroneous, and that, without them, the court's ultimate judgment is unsupported by its findings and clearly erroneous. Appellant's Br. pp. 17 (findings 9, 10), 20 (findings 11, 13), 22 (finding 14). The court's remaining findings are unchallenged, and we accept them as true. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997). We review the factual components of the challenged findings before proceeding to the legal conclusions embodied in them.

[15] As a general observation, we agree with Mother that the factual record is not as full as it might be. However, we think this is largely due to Mother's own evasion of any contact with Child, DCS, and the court during the two years of Child's life. Critically, she failed to appear for the April 20, 2016, termination hearing with full knowledge that she was unrepresented at the time and thus would have no one to speak for her. Mother has had numerous chances to rebut DCS's allegations but has refused to avail herself of any of them. Mother

---

[2] The court's order here uses the name "Aaliyah," which is not the name of Child, Mother, or anyone connected to this case. At all other points in its order, however, the court referred to Child by her correct name. Mother makes no claim that her rights or Child's were prejudiced by this scrivener's error. We therefore disregard it as harmless. Ind. Appellate Rule 66(A) (Errors "sufficiently minor so as not to affect the substantial rights of the parties" are not grounds for relief.).

cannot convert this two-year refusal to participate into a one-time success on appeal.

[16]     As to finding 9, Mother argues that "[t]he record only establishes Mother failed to *complete* services," Appellant's Br. p. 17 (emphasis added), not that she "failed to *engage* in services or visit [Child]," as found by the court. Appellant's App. p. 16 (emphasis added).

[17]     The family's case manager testified that, "to [her] knowledge," Mother never participated in *any* drug screens, drug abuse treatment, or visitation with Child as ordered by the court in its February 28, 2014, dispositional order. Tr. p. 11; *see also* Tr. p. 8 ("Mom has not participated . . . ."). Mother responds that, because the case manager was not assigned to the case until July 2015, "the record is silent" as to Mother's involvement prior to that date. Appellant's Br. p. 18. This is not at all true. The case manager had familiarized herself with Child's case when she was assigned to it and testified on that basis. Tr. p. 10. Moreover, the case manager testified that, at the time of the court's July 17, 2015, permanency hearing, Mother had not been in contact with DCS and had been "noncompliant" with the dispositional order up to that time. Tr. p. 6. At the July 17, 2015, permanency hearing, at which Mother appeared by counsel but not in person, the court expressly found that Child's "parents' whereabouts are unknown," that "they have not engaged in services," and that they had not visited Child. Ex. Vol., Pet.'s Ex. 1. No evidence appears in the record, and Mother does not now assert, that Mother did ever participate in the services or visitation ordered by the court.

[18] The record discloses probative evidence from which the court could find that DCS had shown by clear and convincing evidence that Mother "failed to engage in services or visit [Child]." Appellant's App. p. 16. Finding 9 is not clearly erroneous.

[19] As to finding 10, Mother raises various possibilities which might have excused her failures to participate, such that it was error for the court to find an "almost total lack of effort" on her part demonstrating that she is "unable or unwilling to parent." Appellant's App. p. 16. Mother speculates that DCS might have never referred her to services, which might have justified her failure to participate in them. Appellant's Br. p. 17. Mother further speculates that DCS might not have offered services to Mother while in prison, which might have been available to her there. *Id.* at 17-18. Mother finally speculates that her failure to participate in services and to visit Child might have been the result of her incarceration.[3] *Id.*

[20] DCS responds correctly that Mother assumed the risk of being unable to participate in Child's upbringing by engaging in criminal conduct. *In re A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992). DCS responds further that, even if Mother failed to participate in the first instance because she was incarcerated, it is undisputed that she never notified DCS of this fact in an attempt to remedy her and Child's situation. "[A] parent may not sit idly by without asserting a

---

[3] The nature and timing of Mother's criminal matter are not clear from the record.

need or desire for services and then successfully argue that [s]he was denied services to assist [her] with [her] parenting." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). Most importantly, however, Mother's speculative inferences, drawn in her own favor rather than in favor of the judgment below, are not entitled to any consideration under the applicable standard of review.

[21] From the same facts that supported finding 9, the court below was permitted to find by clear and convincing evidence that Mother demonstrated "an almost total lack of effort" to parent Child. Appellee's App. p. 16. Finding 10 is not clearly erroneous.

[22] As to the conclusion embodied in finding 10, that there was a reasonable probability that Mother would not remedy the conditions that led to Child's removal and continued placement outside Mother's care, Mother claims that "no evidence" supported that conclusion. Appellant's Br. p. 18. Again, Mother's arguments amount to speculation about alternative conclusions the record might sustain. Two conditions led to Child's removal from Mother's care at the time of the CHINS proceedings in January and February 2014: Mother's admitted drug abuse and need for treatment, and Mother's admitted lack of stable housing. Mother claims that there is no evidence showing these conditions persisted at the time of the termination hearing on April 20, 2016.

[23] As outlined above, however, the court found that Mother had not participated in the treatment services required of her. For more than eighteen months between the first dispositional hearing on February 28, 2014, and November

2015, when DCS located her in state prison, Mother made no attempt whatsoever to communicate with DCS and with Child. After being found in prison in November 2015, Mother refused to even speak with the public defender representing her in the termination proceedings. The family's case manager testified that Mother had been "given . . . a length of time to co[-]operate and participate . . . and she hasn't done that." Tr. p. 8. "[T]he responsibility to make positive changes will stay where it must, on the parent." *Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007).

[24] In the eighteen months before DCS discovered her in state prison, Mother's complete failure to remedy the conditions warranting removal, and her evident unwillingness or inability to show that she had, would, or cared to do so, entitled the court below to find a reasonable probability that Mother would not do so in the future. *See Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) ("A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change."), *trans. denied*. The court's conclusion was supported by probative evidence and is not clearly erroneous.[4]

---

[4] Under I.C. § 31-35-2-4(b)(2)(B), DCS had to prove either the conclusion embodied in finding 10, that there was a reasonable probability that Mother would not remedy the adverse conditions, or the conclusion embodied in finding 11, that there was a reasonable probability that continuation of the parent-child

[25]     As to the conclusion embodied in finding 13, that termination of the parent-child relationship was in Child's best interests, Child's GAL and the family's case manager were both of the opinion that it was because it would facilitate Child's adoption. Ex. Vol., GAL Ex. I, ¶ 7; Tr. p. 8. As Mother herself points out, Child has already been placed in four different homes, Appellant's Br. 23, heightening the need for permanency that adoption of Child by Child's relative would provide. GAL Ex. I, ¶ 7. Child's GAL thought that Mother was unable to provide such permanency. *Id.* Mother argues that she should be given more time to participate in services to and "prov[e] herself to be an appropriate parent." Appellant's Br. p. 24. More time, Mother argues, would not undermine adoption and could facilitate it if, "upon further reflection," Mother changes her mind about wanting or being able to parent Child. Appellant's Br. p. 21.

[26]     Mother points to *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*, reversing termination of a father's parental rights to allow him time to "demonstrate the desire and ability to achieve a meaningful reunification with his children." *Id.* at 623. That case, however, is replete with evidence of the father's serious, good faith efforts to reform his conduct while incarcerated: more than 1,000 hours of individual and group services, twelve hours of college credit, employment and housing already

relationship posed a threat to Child's well-being. Because we have determined that DCS prevailed on the former, we do not address the latter.

secured prior to release from prison, and his testimony at the termination hearing that drugs "[had] ruined everything about [him]." *Id.* at 622. No evidence appears here that Mother has made any similar effort.

[27] Under the facts and circumstances before it, the court was permitted to find that Child's need for permanency outweighed Mother's desire for additional time. *See Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006) ("A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests. . . . [Child] is in need of stability and permanency now . . . and . . . there is no guarantee that Castro will be a suitable parent once he is released . . . ."). The court's conclusion that termination was in Child's best interests was not clearly erroneous.

[28] Finally, as to the conclusion embodied in finding 14, that DCS's plan to have Child adopted by her relative is satisfactory, Mother argues that it is not satisfactory because DCS has not shown the relative to be a fit parent. Appellant's Br. pp. 20-21. DCS responds that no statute or decision required it to do so, and, moreover, that the adoption court, not the termination court, is charged with deciding whether a particular adoption is in the child's best interests. Appellee's Br. p. 29.

[29] In addition, Mother relies on no authority for the proposition that DCS must show or the termination court must find that, where the permanency plan is

adoption, the intended adoptive parent "is capable [of] and willing to [undertake] a lifetime of parenting" Child. Appellant's Br. p. 20. To the contrary, given a willing adoptive parent and no indication that the adoptive parent would be unfit, adoption may be per se satisfactory. *In re A.K.*, 755 N.E.2d 1090, 1098 (Ind. Ct. App. 2001); *see also In re D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004) (To be satisfactory, the "plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated."), *trans. denied*. Moreover, Child's GAL, with first-hand knowledge, was of the opinion that Child's current placement with her relative safely met Child's needs. Ex. Vol., GAL Ex. I, ¶ 4. The family's case manager was of the same opinion. Tr. p. 9. The court's conclusion that this constitutes a satisfactory plan was not clearly erroneous.

# Conclusion

For these reasons, we conclude that the court's order terminating the parental rights of Mother in Child was not clearly erroneous.

Affirmed.

Baker, J., and Pyle, J., concur.