# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2020, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: A.A. and H.A. (Children in Need of Services)

A.S. (Mother),

*Appellant*,

v.

Indiana Department of Child Services,

*Appellee*.

January 31, 2020

Court of Appeals Case No. 19A-JC-1851

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

The Honorable Deborah Domine, Magistrate

Trial Court Cause Nos.
20C01-1905-JC-63
20C01-1905-JC-64

**Brown, Judge.**

[1] A.S. ("Mother") appeals the trial court's order adjudicating A.A. and H.A. to be children in need of services ("CHINS"). We affirm.

*Facts and Procedural History*

[2] A.A. was born in September 2015, and H.A. was born in February 2019 (A.S. and H.A., together, the "Children"). In April 2019, law enforcement arrived at Mother's home and received information that D.A. ("Father") had shoved Mother, causing her to hit her head on the counter or microwave. The officer noticed things were thrown about the home. Father was taken into custody, and Mother later bonded him out of jail. Police responded to a report of domestic violence on May 8, 2019, and found Mother crying and with a red mark on her cheek which had started to swell. Mother stated Father had come home intoxicated, urinated on the floor, struck her, smashed her car windows, and slashed a tire.

[3] On May 20, 2019, the Indiana Department of Child Services ("DCS") filed a petition alleging the Children were CHINS. The next day, the court issued a no contact order prohibiting Father from having contact with Mother and the Children. In July 2019, the court held a factfinding hearing at which it heard testimony from several law enforcement officers, a DCS intake officer, and Mother. Mother indicated she had placed a padlock on her apartment door, obtained a protective order, had found a babysitter, and worked no less than thirty-two hours a week. She indicated the padlock had been on her apartment door for about three weeks and Father had not visited her home since she obtained the protective order.

[4] The trial court entered an order finding the Children were CHINS and providing in part:

1. [Mother] testified that she has seen the adverse effects of the domestic violence in her household on of one her children. She testified [A.A.] is quick to anger, frequently throws objects, throws herself to the floor, and [she] cries a lot.

* * * * *

4. [Mother] described that she and her children moved to Goshen, Indiana in March of 2018, to be with [Father]; she said that in recent months she has called the police "about 50 times" to report problems in her home involving violence perpetrated by, and drug use by [Father].

5. Goshen Police Sergeant Curtis Weldy was called to the home on April 14, 2019. He said that on that day there had been an argument between [Mother] and [Father] that escalated into a physical altercation between [them]. Officer Weldy stated that the domestic violence in the home occurred in the presence of at least one of the children. He said that [A.A.] walked into the room where the altercation was going on, and [H.A.] was in a bouncer in the adjoining room.

* * * * *

7. [Father] went to jail on April 14, 2019, as the result of the incident of alleged domestic violence, and [Mother] acknowledges that she subsequently bonded him out of jail and he returned home.

8. [Mother] testified that she bonded [Father] out of jail because he said he was going to do better and she wanted to believe him.

9. On May 8, 2019, police were called to the home . . . once again on a report of domestic violence.

10. Goshen Police Officer Ryan Adams testified that when he arrived at the home, he found [Mother] was crying, she was angry and had a

red mark on her cheek that had started to swell. [Mother] told police that [Father] had come home intoxicated, urinated on the floor of the home, struck her, smashed the windows on her car and slashed, at least, one tire on the vehicle. Officer Adams explained that he discussed options to break the cycle of domestic violence with [Mother] and [she] declined the help offered.

11. Officer Ryan described that less than 24 hours after [Mother] had reported the domestic violence in her home on May 8, 2019, she called police again. He said that he went to the home again, and [Mother] recanted her statement that she had been battered by [Father] and said that she made the story up. Once again, [Mother] said that she did not need help.

12. On the date of the Fact-finding Hearing, [Mother] changed her story about the May 8, 2019 incident again; at the Fact-finding Hearing, [Mother] admitted that she had lied to police when she recanted her story, she admitted that she had been struck and said that she now regrets the fact that she recanted. She explained that she recanted her story and said that she was not battered by [Father] because she had spoken with [him] for about five hours and he said that he wanted to change and she believed him.

13. After the May 8, 2019 report was recanted, police were called to the home . . . again on May 16, 2019. Goshen Police Officer Zachary Miller stated he arrived at the home . . . and found [Father] outside; he said that [Father] appeared to be using some sort of illegal narcotic. According to police, [Mother] had called the police for help on that day, but [Father] told police that he was the victim and that he had been kicked by [Mother] in the groin.

14. [Mother] testified that she called the police on May 16, 2019, because [Father] came home yelling, and appeared to be intoxicated. She said that she believed that he was under the influence of drugs because he had stolen her medication.

15. Both [Father] and [Mother] have a history of drug use; the evidence supports that [Father] is currently struggling with addiction, but [Mother] has been sober for more than a year.

\* \* \* \* \*

17. At the Fact-finding Hearing [Mother] testified that she has put a padlock on her door and obtained an ex-parte protective order to keep [Father] away from the home; she was firm in stating that she does not need DCS involvement to keep [him] out of the home and keep her family safe.

18. But the family history supports the conclusion that [Mother] is likely to change her mind again and place her children back in harms' way.

19. [Mother] described [Father] as an "ass hole," but testified that she has been in a relationship with [him] since 2014.

20. [Mother] acknowledged that she and her family have had a history of domestic violence and a history with the DCS in Steuben County. The DCS cases began in Steuben County in 2015. [Mother] admitted that [A.A.] was previously removed from her care, and that [A.A.] was just returned to her months before the family moved to Goshen to be with [Father].

\* \* \* \* \*

22. [DCS intake officer Tana] Parson said that [Mother] and [Father] have a history of violence, and reconciliation. She said that children in the household have been exposed to domestic violence for several years.

23. Parson acknowledged that [Mother] has recently taken steps to keep [Father] out of the family home, but also opined that that does not eliminate concerns for the safety of the children because [Father] has been ordered to stay out of the home repeatedly in the past and he has come back multiple times and [Mother] has let him back in.

\* \* \* \* \*

25. [Mother] testified that she lives the cycle of abuse.

26. At this moment [Mother] has taken steps to separate her family from [Father], but her long history with [him] demands caution because

the history supports the conclusion that the current resolve to separate from [him] is part of a cycle of abuse that [Mother] lives.

27. Moreover, the Court places very little weight on [Mother's] declaration that she will keep [Father] from her home and keep her children safe; [Mother] admitted in court that she lied to police to protect [Father] and, therefore, her credibility is suspect.

* * * * *

29. At this moment, while [Mother] has taken important steps to keep [Father] out of the family home today, she cannot protect her children from domestic violence and the harm that she has seen that has resulted from domestic violence in the family home.

* * * * *

32. Here, [Mother] testified that she has seen the adverse impact of domestic violence on the behaviors of her three year old child. The evidence supports that [Father] has perpetrated violence in the family home in the presence of at least one of the children in the home, and that [Mother], through her omissions, is unable to keep the children safe; she has failed to break the cycle of abuse, she has refused help twice during the course of this most recent DCS investigation, and she cannot keep [Father] out of the family home for a sustained period of time.

Appellant's Appendix Volume II at 106-109. The court issued a dispositional order providing the Children were to be placed with Mother under the supervision of DCS and requiring Mother to participate in services. **(110)**

### *Discussion*

[5] Mother claims the trial court erred in concluding the Children were CHINS. She argues she took steps to keep Father out of the home by placing a padlock on the apartment door and filing for a protective order and, at the time of the

hearing, the domestic violence in her relationship with Father did not exist and the padlock had been on the door for approximately three weeks. DCS maintains the court recognized Mother obtained a padlock and restraining order but ultimately placed greater weight on her history and did not find Mother's testimony she would keep Father away credible.

[6] We do not reweigh the evidence or judge the credibility of witnesses and consider only the evidence which supports the trial court's decision and reasonable inferences drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1286-1287 (Ind. 2014), *reh'g denied.* We apply the two-tiered standard of whether the evidence supports the findings and whether the findings support the judgment. *Id.* Ind. Code § 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
>> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>>
>>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>>
>>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and[1]

---

[1] Prior to July 1, 2019, Ind. Code § 31-34-1-1(1) provided:

> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

The CHINS statute does not require a court to wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). Rather, a child is a CHINS when he or she is endangered by parental action or inaction. *Id.* The purpose of a CHINS adjudication is to protect children. *Id.*

[7] Mother does not challenge the trial court's findings of fact, and the unchallenged facts stand as proven. *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (failure to challenge findings by the trial court resulted in waiver of the argument that the findings were clearly erroneous), *trans. denied.* The court heard extensive testimony from law enforcement officers, a DCS intake officer, and Mother. The court found the police had been contacted on multiple occasions due to domestic violence in the home, Mother had bonded Father out of jail, at one point Mother recanted her report but later regretted she had recanted, Mother had been in a relationship with Father since 2014, the family has a history of domestic violence in Steuben County and a case began there in

---

A child is a child in need of services if before the child becomes eighteen (18) years of age:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) . . . .

*See* Pub. L. No. 198-2019, § 8 (eff. Jul. 1, 2019).

2015, A.A. had been previously removed from her care and returned to her months before the family moved to be with Father, and Mother and Father have a history of violence and reconciliation. The court placed very little weight on Mother's declaration she will keep Father from her home and keep her children safe, noted she admitted lying to police to protect Father, and found her credibility to be suspect. It observed the DCS intake officer's acknowledgment that Mother had recently taken steps to keep Father out of the family home and her opinion that this did not eliminate concerns for the safety of the children, as Father had been ordered to stay out of the home repeatedly in the past, he came back multiple times, and Mother allowed this. According to the trial court, while she had taken important steps to keep Father out of the family home as of the hearing, Mother cannot protect the Children from domestic violence, testified she lives the cycle of abuse, has failed to break the cycle of abuse, has refused help twice during the DCS investigation, and cannot keep Father out of the family home for a sustained period of time. To the extent Mother invites us to reweigh the evidence and judge the credibility of witnesses, we are unable to do so. *See In re S.D.*, 2 N.E.3d at 1286.

[8] The court was able to assess Mother's credibility and consider her efforts in light of her prior actions and omissions, her relationship with Father, and her ability to protect the Children. The court's findings and adjudications of the Children as CHINS are not clearly erroneous. We affirm the trial court's order.

[9] Affirmed.

Baker, J., and Riley, J., concur.