## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: R.L., L.L., and A.L. (Minor Children),

and

T.L. (Father) and O.S. (Mother),
*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

January 29, 2019

Court of Appeals Case No. 18A-JT-2253

Appeal from the Dubois Circuit Court

The Honorable Nathan A. Verkamp, Judge

Trial Court Cause Nos.
19C01-1805-JT-162
19C01-1805-JT-163
19C01-1805-JT-164

**Bradford, Judge.**

# Case Summary

[1] T.L. ("Father") is the father of R.L., L.L., and A.L. ("the Children"). The Department of Child Services ("DCS") removed the Children from Father's care due to concerns of domestic violence and drug abuse by Father and the Children's mother. The Children were subsequently determined to be children in need of services ("CHINS") and Father was ordered to participate in and complete certain services. While Father did participate in some services, he failed to consistently participate in or successfully complete any of the services. He also failed to abstain from using drugs. Given Father's failure to abstain from using drugs and to successfully complete the court-ordered services, which were aimed at helping him address his drug abuse issues and deficiencies in providing adequate care for the Children, DCS sought the termination of Father's parental rights in the Children.

[2] At the beginning of the evidentiary hearing, Father requested a thirty-day continuance so that he could allegedly enter an in-patient drug-treatment program. The juvenile court denied Father's request and the evidentiary hearing proceeded as scheduled. Following the conclusion of the evidentiary hearing, the juvenile court granted DCS's petitions to terminate Father's parental rights in the Children. On appeal, Father contends that the juvenile court abused its discretion and violated his due process rights by denying his request for a continuance. Concluding otherwise, we affirm.

# Facts and Procedural History

[3]     Father is the biological father of the Children.[1]  On July 18, 2017, DCS filed petitions alleging that the Children were CHINS.  In these petitions, DCS alleged that the Children were the victims of neglect due to parental domestic violence and drug use.  Following a limited admission by Father, the juvenile court found the Children to be CHINS on August 23, 2017.  The juvenile court subsequently ordered Father to participate in certain services aimed at reunification.  Father was required to contact the family case manager ("FCM") on a weekly basis; notify the FCM of any changes in address or employment; enroll in all programs recommended by the FCM; keep all appointments with service providers; maintain suitable, safe, and stable housing; secure and maintain a legal and stable source of income; assist in the formulation and implementation of a protection plan for the Children; refrain from using drugs or alcohol; complete a substance abuse assessment and successfully complete all treatment recommendations; submit to random drug screens; meet all personal medical and mental health needs; and attend all scheduled visitations with the Children.

[4]     During a November 20, 2017 review hearing, the juvenile court found that Father had not complied with the Children's case plans and was not

---

[1]  Although Mother's parental rights were also terminated, she does not participate in this appeal.  As such, we will limit our discussion to facts pertinent to the juvenile court's orders terminating Father's parental rights in the Children.

consistently participating in services. Specifically, Father had not consistently participated in parent-aide or home-based counseling sessions, only submitted to thirteen of the twenty-six ordered drug screens and had tested positive on seven of the thirteen screens, and attended seventeen of the twenty-one scheduled visitation sessions. Given Father's inconsistent participation and positive drug screens, the juvenile court found that Father had not enhanced his ability to fulfill his parental obligations.

[5] Another review hearing was held on February 20, 2018. During this hearing, the juvenile court again found that Father had not complied with the Children's case plans and was not consistently participating in services. Specifically, Father did not attend any of the seven scheduled parent-aide sessions or any of the three scheduled home-based therapy sessions. He submitted to only six of the eighteen scheduled drug screens, and of those six, tested positive on five. Father attended only seven of the seventeen scheduled visits with the Children. Based on Father's inconsistent participation and positive drug screens, the juvenile court again found that Father had not enhanced his ability to fulfill his parental obligations.

[6] A permanency hearing was held on April 17, 2018. During this hearing, the juvenile court again found that Father had not complied with the Children's case plans and was not consistently participating in services. Specifically, Father did not attend any of the three scheduled parent-aide sessions. Father submitted to only two of the eleven scheduled drug screens and tested positive on both. He attended four of the five scheduled visits with the Children.

Further, while Father did participate in two therapy sessions scheduled through Lifeline, his prior therapy treatment offered through Raintree was closed due to Father's non-compliance. In addition, as of the date of the hearing, Father had completed only one half of his court-ordered psychological evaluation. At the conclusion of the hearing, the juvenile court changed the permanency plan to termination and adoption.

[7] DCS filed petitions seeking the termination of Father's parental rights in the Children on May 16, 2018. The juvenile court held an evidentiary hearing on July 11, 2018. During the evidentiary hearing, Father requested a thirty-day continuance. In making this request, Father indicated that he wished to enroll in an in-patient drug-treatment program. The juvenile court denied Father's request and the evidentiary hearing continued as scheduled. On July 20, 2018, the juvenile court issued orders terminating Father's parental rights in the Children.

# Discussion and Decision

[8] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his child. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be

subordinated to the best interests of the child. *Id*. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent—child relationship. *Id*.

In considering whether the termination of parental rights is appropriate, we do not reweigh the evidence or judge witness credibility. We consider only the evidence and any reasonable inferences therefrom that support the judgment … and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous. In evaluating whether the trial court's decision to terminate parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody.

*K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cty. Office*, 989 N.E.2d 1225, 1229–30 (Ind. 2013) (internal citations and quotations omitted).

# I. Motion to Continue

In challenging the termination of his parental rights, Father bases his "broad assertions not on a failure of the State or the court to comply with the technical

terms of the applicable statutes." Appellant's Br. p. 15. "The gravamen of his argument is the court's refusal to give him a brief continuance to receive in-patient treatment for his addiction." Appellant's Br. p. 15.

[11] "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014).

> We will reverse the trial court only for an abuse of that discretion. An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.

*Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006) (internal citations omitted), *trans. denied*.

[12] Father points to our decision in *Rowlett* in support of his contention that the trial court abused its discretion by denying his request for a thirty-day continuance. In *Rowlett*, the father requested a continuance of the upcoming evidentiary hearing. 841 N.E.2d at 618. The father, who was scheduled to be released from prison approximately six weeks after the scheduled hearing, argued that the continuance was necessary to allow him the opportunity to complete court-ordered services and work toward reunification with his children. *Id*. at 619. In concluding that the trial court abused its discretion in denying the request for a continuance, we noted that while incarcerated, the father had participated in numerous services and programs offered by the

correctional facility aimed toward helping him reach his goal of reunification with his children. *Id.* We further noted that because the children had been in the care of their maternal grandmother since they were determined to be CHINS and DCS's plan was for them to be adopted by maternal grandmother, under those specific circumstances, "continuation of the dispositional hearing until sometime after [the father] was released would have had little immediate effect upon the children." *Id*. *Rowlett*, however, is distinguishable from the case now before us.

[13] Unlike in *Rowlett*, Father's lack of participation was a result of Father's choices, not some other barrier. For instance, Father was not incarcerated or otherwise denied the opportunity to complete the court-ordered services. He admitted that he was offered services, such as counseling to address his drug-abuse issues, but he did not substantially participate in the services offered. Father admitted that he continued to use drugs during the underlying CHINS and termination proceedings.

[14] Father asserts that DCS never offered him the opportunity to participate in an in-patient drug-treatment program. Father, however, does not indicate that he ever communicated any desire to do so prior to the evidentiary hearing. He also does not explain why he waited until the evidentiary hearing to communicate his alleged desire to participate in an in-patient drug-treatment program.

[15] "A parent may not sit idly by for such an extended period without asserting a need and desire for services and then successfully argue that [he] was denied services to assist [him] with [his] parenting." *Jackson v. Madison Cty. Dep't of Family & Children*, 690 N.E.2d 792, 793 (Ind. Ct. App. 1998), *trans. denied*. Moreover, we reject Father's suggestion that his failure to achieve and maintain sobriety in a timely fashion can be blamed on either the trial court or DCS. As we stated in *Prince v. Department of Child Services*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007),

> [f]rom one parent to the next, the DCS and trial court have no way to know whether addictions treatment is failing because the treatment is not the most appropriate for the parent or because the parent simply does not care enough about reunification to maintain sobriety under any form of treatment. Accordingly, we will not place a burden on either the DCS or the trial court to monitor treatment and to continually modify the requirements for drug and alcohol treatment until a parent achieves sobriety. Rather, the responsibility to make positive changes will stay where it must, on the parent. If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance from the court or DCS.

[16] This is not a situation where Father actively participated in the services offered but nonetheless required additional intensive services to overcome his addiction. Instead, the record reveals that Father demonstrated little interest in participating in any of the drug-treatment programs offered by DCS. For instance, the record reveals that Father attended only one of the fifteen offered parent-aide sessions. He only attended one home-based therapy session, even

though at least three others were offered. He submitted to only twenty-one of the fifty-five scheduled drug screens. Of the twenty-one, he tested positive for drugs fourteen times. In addition, Father only completed one half of the court-ordered psychological evaluation. Further, while Father did participate in two scheduled therapy sessions offered through Lifeline, his previous therapy services scheduled through Raintree were closed due to his "non-compliance [with] those services." Ex. p. 95.

[17] Father admitted that his participation in visitation with the Children was inconsistent, blaming his inconsistent attendance on a lack of communication and transportation. Specifically, Father stated that he (1) did not have a phone and therefore could not call to inform DCS that he would attend a visitation session and (2) lacked transportation.[2] Father acknowledged, however, that he could have accessed a phone and walked to visitation sessions if he had truly been motivated to do so.

[18] Father also admitted that he was unemployed as of the date of the evidentiary hearing. When asked what he does during the day, Father indicated that he "mainly sit[s] around" and tries to "think of ways to get help" but will ultimately "just shrug it off" and "think of ways to get high." Tr. p. 53. Father

---

[2] The requirement that Father call prior to a visitation session was put into place after "multiple occasions where [the] kiddos were transported to the [visitation center] and [Father] no-call, no showed." Tr. p. 77.

also admitted that he did not have "a residence [he] live[s] at" and was "in between places." Tr. p. 55.

[19] He further admitted that although he had been offered counseling to address his issues stemming from his drug use, he did not substantially participate in the counseling. Father blamed his failure to substantially participate in services on the removal of the Children from his care, explaining "[i]t's hard to do anything consistent when you don't have your kids right there to look at.... Now we don't have our kids, we can forget every second." Tr. pp. 57–58. Father acknowledged that he continued to use drugs and that he was currently unable to provide the Children with stability.

[20] While Father admitted that the Children "shouldn't have to wait" on him to progress to the point where he could provide them with stability, he also stated "But if I could ask my kids to wait another [thirty-one] days, that would be great." Tr. p. 61. Father acknowledged that he had not yet scheduled an appointment with any in-patient treatment facility, but merely suggested that he might be able to live drug-free and provide stability for the Children if he entered in-patient treatment "for [thirty] days ... maybe [thirty-one] days." Tr. p. 55. Father, however, also indicated that he did not believe that it was necessary for children to live in a drug-free home.

[21] Father's apparent disinterest in participating in the services offered or in living a drug-free lifestyle coupled with the fact that he waited until the day of the evidentiary hearing to request the opportunity to complete an in-patient drug-

treatment program suggests that this request is more of a delay tactic than a true desire to get the treatment necessary to help him become an effective parent. Further, given Father's failure to consistently participate in the services that were offered, there is nothing in the record to suggest that DCS could have reasonably believed that Father would be interested in participating in more intensive services, such as an in-patient drug-treatment program. As such, we cannot say that he was prejudiced by the denial of his motion for a continuance. We therefore conclude that the trial court did not abuse its discretion in denying Father's motion. *See Rowlett*, 841 N.E.2d at 619 (providing that no abuse of discretion will be found when the moving party has not demonstrated that he was prejudiced by the denial of his request for a continuance).

## II. Sufficiency of the Evidence

[22] While Father generally claims that DCS presented insufficient evidence to prove that the conditions resulting in the Children's removal from his care would not be remedied, the continuation of the parent—child relationship posed a threat to the Children, and termination was in the Children's best interests,[3] Father's claims are limited to his contention that the juvenile court abused its discretion by denying his motion to continue. Father does not point to any alleged deficiencies in DCS's evidence or allege that any of the juvenile

---

[3] These factors are the factors alleged in accordance with Indiana Code section 31-35-2-4(b)(2)(B) and (C). Father does not challenge the sufficiency of the evidence to prove any of the factors alleged under Indiana Code section 31-35-2-4(b)(2)(A) and (D), namely that the Children have been removed from his care for at least six months and that DCS has a satisfactory plan for the care and treatment of the child.

court's findings of fact or conclusions thereon relating to these factors are clearly erroneous. Therefore, to the extent that Father raises a separate sufficiency challenge, Father has waived any such challenge. *See generally, In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (providing that because the parent did not specifically challenge the trial court's findings or conclusions, any argument that the trial court's findings or conclusions were clearly erroneous was waived), *trans. denied*.

[23] The judgment of the juvenile court is affirmed.

Bailey, J., and Brown, J., concur.