

FILED

Dec 23 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Katharine Vanost Jones
Evansville, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship, S.K., Minor Child, | December 23, 2019 |
| T.K., Father, | Court of Appeals Case No. 19A-JT-1797 |
| *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Brett J. Niemeier, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 82D04-1811-JT-2170 |
| *Appellee-Petitioner.* | |

**Brown, Judge.**

[1] T.K. ("Father") appeals the involuntary termination of his parental rights to his child, S.K. We affirm.

## *Facts and Procedural History*

[2] Father is the biological father of S.K., born on June 30, 2004. **(Exs. I 53)** On June 17, 2016, the Indiana Department of Child Services ("DCS") filed a petition alleging S.K. was a child in need of services ("CHINS"). An entry dated June 21, 2016, in the chronological case summary ("CCS") indicates that the court held a hearing, Father informed the court that S.K. was subject to the Jay Treaty[1] and that S.K.'s mother was Canadian, DCS indicated that it had not found the child or mother listed as Native American, and the court issued a detention order.[2] A CCS entry dated July 6, 2016, states that DCS determined that mother, while being a member of an Indian tribe in Canada, is not covered by the Indian Child Welfare Act ("ICWA"). A CCS entry dated April 26, 2017, states that Father indicated that he retained counsel and planned on suing DCS in federal court because DCS never contacted the tribe of which the child was a member. In May 2017, DCS filed for termination of Father's parental rights, but the matter was dismissed due to exceeding statutory timelines.

---

[1] The Jay Treaty of 1794, officially titled the Treaty of Amity Commerce and Navigation between His Britannic Majesty and the United States of America, contains twenty-eight numbered articles and addressed British military posts located in America's northwest territory and British interference with American trade and shipping. Father does not cite to the Jay Treaty on appeal.

[2] S.K.'s mother is deceased.

[3] In February 2018, DCS filed a petition for termination of the parent-child relationship. A CCS entry dated March 14, 2018, indicates that the court held a hearing, Father's counsel stated that S.K. was registered with "an Indian tribe out of Canada," and "DCS says they have checked on this and the tribe is not federally recognized." Exhibits Volume I at 227.

[4] At a hearing on September 20, 2018, Father's counsel stated that S.K. was a registered member of a tribe "out of Canada" and that Father believed that "the tribal number of 189, which is on her Indian status card out of Canada, corresponds with the U.S. Federal tribe, therefore, making recognition of her as an Indian child as described and covered by the Indian Child Welfare Act" applicable. *Id.* at 47-48. The court admitted a document from the "Indigenous and Northern Affairs Canada," titled "Temporary Confirmation of Registration Document," which confirmed that S.K. was registered as an Indian under the Indian Act as of March 19, 2010, with the registration number 1890152601. Appellee's Appendix Volume II at 2. DCS's counsel stated that DCS did not dispute that S.K. was a registered member of a Canadian tribe, but asserted that the tribe was not federally recognized by the United States of America and that the ICWA did not apply. DCS's counsel also referenced a letter from the United States Department of the Interior. In that letter dated March 19, 2018, the Bureau of Indian Affairs of the United States Department of the Interior acknowledged the official notice received by the Bureau of Indian Affairs, Eastern Region, by DCS with regard to S.K., a child who DCS believed may be covered by the ICWA. The letter states in part:

It appears you are trying to establish membership in a tribe for the child as you have reason to believe the child has Lac Des Mille First Nation of Canada heritage.

The Lac Des Mille First Nation of Canada is not listed as a federally recognized tribe. The federal ICWA applies only if the Tribe is a federally recognized tribe.

DCS Exhibit A. The termination cause was dismissed due to exceeding statutory timelines.

On November 29, 2018, DCS filed a verified petition for involuntary termination of the parent-child relationship asserting that the court had jurisdiction under "I.C. 31-30-1-1, 31-21-5-1, 31-35-2-3, et al." Appellant's Appendix Volume II at 26.

On December 3, 2018, Father filed a motion to dismiss alleging that S.K. was a member of a Canadian recognized tribe and that the Jay Treaty of 1794 and the ICWA applied. He asserted that he previously notified DCS and that DCS "informed the court that they were aware but that the children's tribe was not a U.S. recognized tribe." *Id.* at 32. He asserted that S.K. was a "registered member of the Lac Des Mille Lacs Canadian Tribe" which "is recognized through the Objawie and/or Chippewa native tribes in both the U.S. and Canada," and that "[t]his tribe is also known as Mille Lacs Band of Ojibwe or Mille Lacs Band of Chippewa Indians with its homeland being Mille Lac Indian reservation in Minnesota." *Id.* He also asserted that DCS stated on July 6, 2016, that the tribe was Canadian and not federally recognized, that there was no record filed that DCS served notice upon the appropriate tribe within

the CHINS case, that DCS sent a notice to Nashville, Tennessee, "to the Eastern Bureau of Indian Affairs, not the appropriate region for the tribe," that he and S.K. constitute an Indian family pursuant to the ICWA and Indiana law, and that jurisdiction must be transferred to the tribal court pursuant to § 1911(b) of the ICWA. *Id.* at 33. Father also asserted that, if the ICWA applies but the case remains in the court, then the burden of proof must be "beyond a reasonable doubt" in order to terminate a parent's rights under the ICWA. *Id.* at 34.

[7] On February 25, 2019, the court held a hearing. Father's counsel indicated that Father was not present and requested a continuance. DCS's counsel objected to a continuance and asserted that the court previously ordered Father to be present, the case manager discussed the court dates with Father, called the local hospitals, checked with the local jail, and attempted to call Father at the last known phone numbers. The court ordered that Father was "defaulted." Transcript Volume II at 5.

[8] DCS presented the testimony of Elizabeth Greenwell, the probation officer with Vanderburgh County Adult Felony Probation, court appointed special advocate Deborah Gamache ("CASA Gamache"), and family case manager Paula Wilson ("FCM Wilson"). DCS's counsel then addressed Father's motion to dismiss and asserted that the Department of the Interior Legal Affairs informed DCS that the tribe to which S.K. belongs was not federally recognized and that DCS submitted proof of this to the court in the prior matters. The court asked

Father's counsel if she had anything else, and she stated "No." *Id.* at 24. The court denied the motion to dismiss.

[9] On February 27, 2019, Father's counsel filed a motion to reconsider asserting that "Father's friend contacted counsel and the Court today's date to inform of being in-patient in Brentwood Meadows," and that Father "requests the Court re-open the case to allow Father to be present for the presentation of evidence." Appellant's Appendix Volume II at 35. A CCS entry dated March 22, 2019, provides that the court granted Father's motion to reconsider, set aside Father's default, and ordered the parties to appear on April 9, 2019. On April 9, 2019, Father appeared in custody by video, and the court scheduled a factfinding hearing for May 20, 2019.

[10] On May 20, 2019, the court continued the hearing. Father's counsel indicated that Father was not present, noted that there were two active warrants for Father, and requested a continuance. DCS's counsel objected to a continuance. The court stated that there did not appear to be a valid reason for Father's absence and denied the motion for a continuance. DCS presented the testimony of FCM Wilson and CASA Gamache.

[11] On July 8, 2019, the court terminated Father's parental rights to S.K. The court's order states in part:

### INDIAN CHILD WELFARE ACT (ICWA)

1. Father maintained throughout the CHINS case as well as the case herein that the child was a member of a registered Indian tribe and as such, DCS was required to comply with ICWA.

2.  The evidence established that the child is a member of a Canadian Tribe, Lac Des Mille Lacs. The evidence was uncontroverted that the Tribe is recognized in Canada, but is not registered or recognized by the government of the United States.

3.  DCS made contact with relative members of the tribe, the child's grandparents, seeking whether the grandparents would be willing to have placement of the child with them. The grandparents were unwilling to take placement, especially if the child did not want to move to Canada.

*Id.* at 21. In a nineteen-page order, the court detailed Father's incarceration, substance abuse, unsuitable housing, instability, criminal involvements, and failure to comply with services. The court concluded there was a reasonable probability that the conditions which resulted in S.K.'s removal and continued placement outside the home would not be remedied and that the continuation of the parent-child relationship posed a threat to S.K.'s well-being, termination of the parental rights was in S.K.'s best interests, and there was a satisfactory plan for the care and treatment of the child.

### Discussion

Father argues that the trial court lacked jurisdiction pursuant to the ICWA. He asserts that "[t]he Lac Des Mille Lacs, also known as Mille Lacs Band of Ojibwe and Mille Lacs Band of the Chippewa Nation, is part of the Chippewa Nation whose homeland is in Minnesota." Appellant's Brief at 13. He contends that DCS failed to send notice to the Minnesota Chippewa Nation or the Minnesota Office of the Midwest Region of the Bureau of Indian Affairs. Without citation to the record, he asserts that DCS was "presented with case

law and tribal documentation identifying S.K.'s First Nations identity." *Id.* at 20. He also argues that the trial court erroneously applied the "clear and convincing evidence" standard instead of the more restrictive "beyond a reasonable doubt" standard required by the ICWA. *Id.* at 21.

[13] DCS argues that S.K. was not an Indian child for purposes of the ICWA and that the trial court therefore had jurisdiction to hear the matter and was not required to follow the ICWA's requirements. It contends that Father failed to prove that the Minnesota tribe is the same as S.K.'s Canadian tribe. It argues that Father waived any challenge to the sufficiency of the evidence because he does not challenge any of the court's findings or conclusions.

[14] "The ICWA is structured around the concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies[.]'" *In re S.L.H.S.*, 885 N.E.2d 603, 612 (Ind. Ct. App. 2008) (quoting *In re T.R.M.*, 525 N.E.2d 298, 302 (Ind. 1988) (citing 25 U.S.C. § 1901(4)), *reh'g denied*, *cert. denied*, 490 U.S. 1069, 109 S. Ct. 2072 (1989)). In passing the ICWA, Congress declared that the policy of this Nation is:

> [T]o protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .

Thus, the power of state courts to conduct termination proceedings involving children of Indian ancestry may be subject to significant limitations under the ICWA. *In re S.L.H.S.*, 885 N.E.2d at 612 (citing *In re T.R.M.*, 525 N.E.2d at 301).

"Although a court, after a proper petition for transfer of the proceeding, is required to transfer to an Indian tribe's jurisdiction any proceeding to terminate the parental rights of an Indian child not domiciled or residing within the reservation of the Indian child's tribe, *see* 25 U.S.C. § 1911(b),[3] availability of this right to transfer is contingent on the applicability of the ICWA to the

---

[3] 25 U.S.C.A. § 1911 provides:

(a) Exclusive jurisdiction
An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) Transfer of proceedings; declination by tribal court
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

(c) State court proceedings; intervention
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes
The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

proceeding sought to be transferred." *In re S.L.H.S.*, 885 N.E.2d at 612. "Thus, the party who seeks to invoke a provision of the ICWA has the burden to show that the act applies in the proceeding." *Id.* (citing *In re J.L.M.*, 234 Neb. 381, 451 N.W.2d 377, 387 (1990)).

[16] "Applicability of the ICWA depends on whether the proceedings to be transferred involve an 'Indian child' within the definition utilized in 25 U.S.C. § 1903(4)." *Id.* at 612-613. Under the ICWA, an "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. 1903(4). An "Indian tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians, including any Alaska Native village as defined in section 1602(c) of Title 43." 25 U.S.C.A 1903(8).

[17] To the extent Father asserts that the Lac Des Mille Lacs tribe was "also known as Mille Lacs Band of Ojibwe and Mille Lacs Band of the Chippewa Nation" and "is part of the Chippewa Nation whose homeland is in Minnesota," Appellant's Brief at 13, we note that he cites to page 222 of the Exhibits, which does not appear to support this statement. Rather, it contains a CCS entry dated June 21, 2016, which states in part: "Father states that child is subject to the Jay Treaty. DCS says they have not found child or mother listed as Native American. Father says mother was Canadian." Exhibits Volume I at 222. He

cites *United States v. Mille Lac Band of Chippewa Indians*, 229 U.S. 498, 33 S. Ct. 811 (1913), which observed that the Mille Lac band was one of the Mississippi bands of Chippewas, but did not mention the Lac Des Mille Lacs tribe or Canada. 229 U.S. at 500, 33 S. Ct. at 812. He also cites www.mnchippewatribe.org, a website with a homepage which states that "[t]he Minnesota Chippewa Tribe, comprised of the Bois Forte, Fond du Lac, Grand Portage, Leech Lake, Mille Lacs, and White Earth reservations, is a federally recognized tribal government," but does not mention the Lac Des Mille Lacs tribe. *See* www.mnchippewatribe.org (last visited December 12, 2019). While Father asserts that his counsel previously informed the court that S.K.'s tribal number corresponded with a federally recognized tribe, he does not point to the record or authority to support this proposition.

[18] The record reveals that DCS contacted the tribe in Canada after Father indicated that S.K.'s tribe was in Canada. The record also contains a letter dated March 19, 2018, from the Bureau of Indian Affairs of the United States Department of the Interior acknowledging the official notice received by the Bureau of Indian Affairs, Eastern Region, by DCS with regard to S.K. and a child who DCS initially believed may be covered by the ICWA. The letter states in part that "[t]he Lac Des Mille First Nation of Canada is not listed as a federally recognized tribe" and "[t]he federal ICWA applies only if the Tribe is a federally recognized tribe." DCS Exhibit A. We also note that the Lac Des Mille Lacs tribe does not appear on the list of Indian entities recognized and eligible to receive services from the United States Bureau of Indian Affairs. *See*

83 FR 4235-02. Based upon the record, we cannot say that Father has demonstrated that S.K. is an Indian child as defined by the ICWA or that the ICWA applies. *See In re S.L.H.S.*, 885 N.E.2d at 614 ("Based on the foregoing, we conclude that Father failed to show that S.L.H.S. was an Indian child pursuant to the ICWA. Consequently, the ICWA does not apply to the underlying proceeding to terminate Father's paternal rights to S.L.H.S., and the trial court properly determined that it had jurisdiction to hear the case.").

[19] To the extent Father does not challenge certain findings of fact, the unchallenged facts stand as proven. *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (failure to challenge findings by the trial court resulted in waiver of the argument that the findings were clearly erroneous), *trans. denied*. Father does not challenge the trial court's conclusions that there was a reasonable probability that the conditions which resulted in S.K.'s removal and continued placement outside the home would not be remedied and that the continuation of the parent-child relationship posed a threat to S.K.'s well-being, that termination of the parental rights was in S.K.'s best interests, and that there was a satisfactory plan for the care and treatment of the child.

[20] For the foregoing reasons, we affirm.

[21] Affirmed.

Baker, J., and Riley, J., concur.